### PORTER, Adm'r, OPA, v. HASHINSKY et al.

### No. 5268.

District Court, E. D. New York.

July 3, 1946.

Callman Gottesman, Chief Enforcement Atty., New York Dist. Office, OPA, of New York City (Charles Pillman, of Brooklyn, N. Y., of counsel), for petitioner.

Bregman & Slow, of Brooklyn, N. Y. (William Bregman, of Brooklyn, N. Y., of counsel), for respondents.

BYERS, District Judge.

Motion to punish respondents for contempt of court for their alleged failure and refusal to comply with the terms of a temporary injunction entered in effect upon consent on May 19, 1945, the material provisions of which are that the respondents are enjoined from:

"(1) Selling or delivering any * * * onions unless and until each sale is accompanied with a notification in writing showing the base price for such sale, the variety and grade of * * * onions being sold, and the state or district within a state where the * * * onions were produced.

"(2) Selling or delivering any * * * onions covered by Revised Maximum Price Regulation 271 unless or until respondents first prepare, keep and make available for examination by the Office of Price Administration, records showing as precisely as possible the basis upon which the respondents determine maximum prices for such commodities hereafter sold.

"(3) Doing or omitting to do any other act in violation of said Regulation."

Then follow affirmative directions conforming to Nos. (1) and (2) above.

The motion is based upon an order to show cause supported by an affidavit by the Enforcement Attorney for the New York Office, asserting that investigation disclosed that the respondents had violated Section 11(b) of Revised Maximum Price Regulation 271 in that they "failed to accompany each sale of * * * onions by a notification in writing showing the base price for such sale, the variety and grade of * * * onions being sold and the State or District within a State where the * * * onions were produced. Said investigation disclosed among other things that such practice on the part of respondents made it an impossible task on the part of the Office of Price Administration to determine at what prices the respondents could sell onions * * * under said regulations. The respondents' failure to adhere to the requirements of Revised Maximum Price Regulation 271 could often result in a sale of onions * * * at prices

in excess as established under the regulation."

The affidavit recites the visit of an investigator at the respondents' premises on January 31, 1946, and an examination of their invoices from December 5, 1945, to February 28, 1946, which disclosed that "all such invoices failed to meet the requirements as prescribed by the regulation and ordered by this Court. That in the sale of onions respondents failed to accompany each sale by a notification in writing showing the base price for such sale, the variety and grade of * * * onions being sold and the State or District within a State where the onions were produced."

The answering affidavit quotes the regulation in question and points out that the moving affidavit fails to show that no "such notification in writing" was given to any purchaser from the respondents. Further, that the base price required to be placed on a notification was impossible of ascertainment unless respondents' suppliers advised respondents of its base price on respondents' purchases of onions.

The affidavit continues that efforts were made to secure such base price from their suppliers without success, and that the base price was unnecessary in any case, since the ceiling price of onions governing the respondents' sales results from consulting a chart issued by the Office of Price Administration "which gives the dollars and cents ceiling price for intermediate sellers". That intermediate sellers do not, nor have they been required to compute their ceiling price from the country shipping point price, since this is all prepared for intermediate sellers on such chart.

Further, that onions are sold in 50 lb. knitted sacks which have imprinted thereon the grade and the state of origin, and that the respondents had inquired of their attorney whether "the written matter contained on the sack itself was sufficient notification to the customer within the meaning of the regulation. Said attorney advised that said sack contained all the elements which were required by the regulation except a statement as to variety."

As to the latter requirement, the affidavit recites that the respondents deal in only the cheapest and lowest type onions for which a ceiling price is prescribed, and that "We have been informed by the Office of Price Administration that it is only necessary to show the variety in our notification where the ceiling price of the onions is higher than that affecting the least expensive variety. * * * In all of the sales which are the subject of this inquiry, Premium onions (those involving a higher ceiling price than appears upon the bulletin above referred to) were not involved. * * *

"We did not deliberately, consciously or willfully violate the regulation or the injunction pendente lite.

*     *     *     *     *     *

"Although we have not been in default and although we have not violated the injunction or the regulation, we respectfully submit that we will gladly conform to any practice which the Office of Price Administration will prescribe, within the scope of the regulation. It is not our purpose to be uncooperative. We are laboring under great difficulties at the present time. While our sales clerks have neither the background, education or capacity to write a form of notification, nevertheless, we will arrange to have this done by our bookkeeper if the Court feels that such practice would be necessary or helpful."

Testimony was taken on May 9 and May 23, 1946, in an effort to bring to light all attendant circumstances, since it was agreed by counsel that this case should be deemed dispositive of three others involving substantially the same question.

The applicable provisions of Revised Maximum Price Regulation 271 are as follows:

11(b) "Every sale of * * * onions by an intermediate seller shall be accompanied by a notification in writing showing the base price for such sale, the variety and grade of * * * onions being sold and the State or District within a State where the * * * onions were produced."

22(a) "Every person subject to the regulation shall, so long as the Emergency

Control Act of 1942, as amended, remains in effect, preserve for examination by the Office of Price Administration all his records, cash receipts, or other written evidences of sale or delivery which relate to the prices charged pursuant to the provisions of this Regulation."

Based upon the testimony, the following Findings are made:

1. There is no regulation which purports to define the precise meaning of "notification in writing".

## Comment

Whoever framed this regulation must have had a reason for using the expression quoted, instead of the word "invoice", "duplicate bill", or other conventional record of a sale. As the witness Leonard expressed it: "Well, our position always was that that could be writing on the invoice itself as the simplest way of fulfilling this requirement."

In the absence of a specific provision, the respondents cannot be held to have violated either the order or the regulation, if they gave any notification in writing containing the prescribed information. The petitioner's proof is merely that the invoices which his inspector examined did not contain the information in question; in order to punish the respondents for contempt, he ought to be required to go further and prove that they did not employ any form of notification in writing whatever.

2. The respondents are secondary jobbers for the purposes of this case; namely, they purchase from one who is a primary jobber of onions, and sell in the Osborne Street Market in Brooklyn to push cart vendors who are retailers.

3. The requirement that such notification in writing shall show "the base price for such sale" is unworkable in practice and unreasonable in theory, because the "base price" means the f. o. b. shipping point ceiling (the producer's price at point of origin) plus "the shipper's risk in transit mark-up, if applicable, and the cost of transportation".

## Comment

The foregoing means that the base price was the maximum price country shipping point, plus the broker's allowance up to 9¢ a bag, plus the cost of transportation into New York City. The testimony leaves no doubt upon that subject.

When these respondents purchased their onions for resale, they did not know all of the necessary elements required to establish a proper base price, nor could they have ascertained the necessary facts. This was recognized in the New York Enforcement Office when the witness Leonard was employed there, and so he devised the system of issuing a bulletin for the purpose of enabling the trade to determine proper ceiling prices, such as plaintiff's Exhibit 1. It is not an official price chart, but it is helpful in the trade and was so used.

In order that a secondary jobber may determine the base price, his source of supply should notify him as to the latter, since this is the only practical method whereby he can obtain the information. Apparently the Enforcement Office has not attempted to promote such a practice on the part of primary jobbers.

I am satisfied that secondary jobbers were informally assured that the base price requirement stated in the regulation which has been quoted need not be seriously regarded by them, although there was no authority for a definitive ruling of that nature. Since it is necessary for the Court to determine whether these respondents have been guilty of deliberate and intentional violation of their undertaking, it is impossible to disregard that aspect of the case. This element of the regulation is unreasonable and, even though the respondents have agreed to abide by it, I can find no reason for declaring them technically in contempt of court for failing to perform that agreement, for probably they could not do so as a practical matter.

4. The requirement that the notification in writing shall show the State or District within a State where the onions were produced has been substantially complied with as to all sales made of onions in bags containing thereon the name of the State of origin.

## Comment

The difficulty with this part of the regulation is that the respondents cannot know in any precise sense where the onions which they sell are in fact grown. They have to rely on a representation made to them, and the bag in evidence clearly and plainly represents that the contents came from Twin Falls, Idaho. The importance of the requirement lies in the price differential which applies to western or southern onions as contrasted with onions grown, for instance, in the State of New York, due to the higher transportation costs affecting the former, and that is a fact which a customer is entitled to know in determining whether a given ceiling price is being observed. If the invoice were to contain the words "sold as" preceding the name of the State of origin, all fair requirements would be met, but that is not the language of the regulation. Again, the difficulty is as to what constitutes a notification in writing. A purchaser is just as much apprised by a statement on a bag as he would be by a separate document called a notification in writing, although concededly the Office of Price Administration would be handicapped in making its investigation if no other writing were to be exacted of which a copy could be kept for the information of inspectors.

5. The respondents evidently have not set forth on their invoices or given other notification in writing to their customers, of the variety and grade of onions being sold.

## Comment

While it may be true that the respondents were conscious of no dereliction in failing to comply with the above requirements, since they say they were not selling Premium onions, the fact remains that they have not complied with so much of the regulation, and no good reason appears why they should not have done so.

The two objects sought to be attained by the regulation quoted appear to be (a) the protection of the customer, and (b) a certain facility of investigation on the part of the Office of Price Administration to enable it to ascertain whether ceiling prices are being observed. The second requirement is of only less importance than the first, but it must be remembered that the purchase records of the respondents are not shown to have been deficient; it clearly appears from the testimony of one of the petitioner's witnesses that these respondents have their original invoices as furnished by their source of supply, which show the point of origin; by comparing those invoices with those of the respondents furnished to their customers, the Enforcement Office could reach a conclusion as to whether the respondents had made any misrepresentations in dealing with their own customers, and whether they had exceeded the ceiling price governing their transactions. The only comment upon that subject made by the witness was that it would require a considerable time on the part of the investigator to develop the facts; it seems to this Court that these respondents should not be punished for contempt, unless an affirmative showing is made against them of violating ceiling prices, and it is not unreasonable to require of the Enforcement Office that its investigator spend the necessary time and develop the required information to support the instant application.

## Conclusion

The motion to punish for contempt will be denied without prejudice to a new motion based upon transactions occurring after this decision is made, if proof be offered that the respondents have misrepresented the onions which they sell, with regard to the point of origin, and that they have exceeded the ceiling price properly chargeable by them, and have failed to disclose to their customers the variety and grade of onions covered by a given sale. It is suggested that the loose term "notification in writing" be changed in the regulation to "invoice" or "duplicate bill" if that is what is meant; and that, instead of placing upon such respondents as these the burden of stating the place of origin of the onions, they be required merely to set forth that a given sale is represented to be of onions grown in a certain State or District thereof, i. e., "sold as (indicating State of origin) onions".

Settle order.